UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 26-CV-01797-KMM-EMB

Richard Spear,

        Petitioner,

v.

Warden, FCI Sandstone,

        Respondent.

**RESPONSE TO
PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2241**

Petitioner Richard Spear brings this habeas action against the U.S. Bureau of Prisons ("Bureau" or "BOP") alleging his due process rights were violated during the processing of an incident report that resulted in the loss of good conduct time. He argues he is being punished in two different incident reports for the same use of drugs. Respondent respectfully requests that the Court deny the petition.

## BACKGROUND

### I.    Petitioner's Place of Confinement, Sentence, and Release Date

Spear is currently incarcerated at the Federal Correctional Institution in Sandstone, Minnesota. *See* Declaration of Joseph Wilson ("Wilson Decl.") ¶ 7, Wilson Ex. B at 1. He was sentenced to an aggregated 120-month term of imprisonment for Possession With Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1)

1

and 841(b)(1)(C); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C § 924(c)(1)(A)(I). *Id.*, Wilson Ex. B at 2; *see also United States v. Spear*, No. 1:20-cr-285 (D. Colo. Apr. 18, 2022), ECF No. 194. He currently has a projected good conduct time release date of September 20, 2029. Wilson Decl. ¶ 7, Ex. B at 3.

## II.   Inmate Discipline through the BOP's Disciplinary Program

Congress authorized the Bureau's disciplinary program in 18 U.S.C. § 4042(a)(3). To ensure that inmates live in a safe and orderly environment, the Bureau has established guidelines to fairly impose discipline on inmates. 28 C.F.R. § 541.1. When BOP staff members "witness or reasonably believe" an inmate has "committed a prohibited act," the staff member prepares "an incident report describing the incident and the prohibited act(s)" the prisoner is charged with committing. *Id.* § 541.5(a). The staff member then provides the incident report to the appropriate Lieutenant for investigation. *Id.* § 541.5(b); Wilson Decl. ¶ 3, Ex. A at 18–19. The investigating officer provides the inmate with a copy of the incident report (ordinarily within 24 hours of staff becoming aware of the inmate's involvement in the incident) and investigates the matter. 28 C.F.R. § 541.5(a); Wilson Decl. ¶ 3, Ex. A at 19. If the conduct may result in criminal prosecution, the investigation and applicable timeframes are suspended until the criminal investigative agency releases the report for administrative processing. Wilson

Decl. ¶ 3, Ex. A at 19.

Upon completion of an investigation, a Unit Disciplinary Committee ("UDC") reviews the incident report, ordinarily within five workdays after the incident report is issued. 28 C.F.R. § 541. If the incident report is not timely heard by the UDC, the Warden must approve the delay. Wilson Decl. ¶ 4, Ex. A at 24–25. The UDC ordinarily consists of two or more staff members, but only one is required when policy provides for the incident report to be referred to the DHO. 28 C.F.R. § 541.7, Wilson Decl., Ex. A at 24. If the UDC finds the inmate committed the prohibited act, it can impose sanctions for certain disciplinary violations or refer the incident report to the DHO. 28 C.F.R. § 541.7(f), (g); Wilson Decl. ¶ 4, Ex. A at 24–25. If an inmate is charged with a Greatest or High severity prohibited act (code 100 or 200 level charges), the UDC will automatically refer the incident report to the DHO for further processing. 28 C.F.R. § 541.7(a)(4); Wilson Decl., Ex. A at 24. The UDC gives the inmate a written copy of its decision, and when the UDC refers an incident report to the DHO, advises the inmate of his rights at the DHO hearing. 28 C.F.R. § 541.7(g), (h); Wilson Decl. ¶ 4, Ex. A at 26.

A DHO is an impartial officer responsible for conducting institution disciplinary hearings and imposing appropriate sanctions. 28 C.F.R. § 541.8; Wilson Decl. ¶ 5, Ex. A at 28, 34, 45–56. The DHO provides the inmate with the opportunity to have a staff representative, make a statement, and present

witnesses and documentary evidence. 28 C.F.R. § 541.8(d), (f); Wilson Decl. ¶ 5, Ex. A at 28–34. The inmate receives a written report of the DHO's final decision. 28 C.F.R. § 541.8(h); Wilson Decl. ¶ 5, Ex. A at 35.

### III.    Spear's Discipline and Proceedings

This case relates to a disciplinary proceeding stemming from Incident Report No. 4091295, related to Spear's THC-positive urinalysis in March 2025. Wilson Decl. ¶ 6, Ex. C at 1. At the time, Spear was housed at the Federal Correctional Institution in Lewisburg, Pennsylvania. *See id.* ¶ 9, Ex. D at 1 ¶ 1. The Incident Report at issue is the third time Spear has been disciplined during his incarceration with the BOP. *Id.* ¶ 8, Exs. C, D.

#### A.    The Incident Report

On March 28, 2025, at approximately 11:44 a.m., Spear received a copy of Incident Report No. 4091295, for a violation of Code 112, Use of Drugs and Alcohol. Wilson Decl. ¶ 9, Ex. D. Earlier that month, BOP required Spear undergo a urinalysis. *Id.*, Ex. D at 1 ¶¶ 15–16. The urinalysis showed a positive result for THC, an intoxicating compound typically associated with marijuana. *Id.*, Ex. D at 5. The sample was sent out for laboratory testing, which confirmed the positive result for the presence of marijuana metabolite, at a rate of 213ng/ml. *Id.*, Ex. D at 6. A review of Spear's medical and pharmacy records on March 27, 2025, indicated he was not currently prescribed any medications which would lead to a positive

for THC. *Id.*, Ex. D at 4. Therefore, Spear's urinalysis was considered an unauthorized positive. *Id.* The incident report charged Spear with Incident 112, "Use of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." *Id.*, Ex. D at 1 ¶ 9; 28 C.F.R. § 541.3, table 1.

### B.    The Investigation

When the incident report was delivered to Spear, he was advised of his rights during the disciplinary process. Wilson Decl. ¶ 10, Ex. D at 3 ¶ 23. Spear did not make a comment. *Id.*, Ex. D at 3 ¶ 24. The investigating officer then referred the incident report to the UDC for a hearing. *Id.*, Ex. D at 3 ¶ 27.

### C.    The UDC Hearing

The UDC conducted a hearing on Incident Report No. 4091295 on March 31, 2025. Wilson Decl. ¶ 11, Ex. D at 2 ¶ 21. During the hearing, Spear stated, "When I got to the institution I had a positive urinalysis. I believe this is residual from that." *Id.*, Ex. D at 2 ¶ 17.  The UDC referred the incident report to the DHO for a hearing, advised Spear of his rights during the DHO hearing, and gave him an opportunity to request witnesses and a staff representative. *Id.*, Exs. D at 2 ¶ 18, E, F. Spear waived his right to a staff representative and declined to call any witnesses. *Id.*, Exs. E, F.

**D.   DHO Hearing**

On April 1, 2025, DHO Chambers conducted a DHO hearing on Incident Report No. 4091295, and subsequently, issued a written report on April 17, 2025. Wilson Decl. ¶ 12, Ex. G. Spear received a copy of the DHO report on April 18, 2025. *Id.*, Ex. G at 5.

As outlined in the DHO report, Spear stated, "I'm not disputing that I provided the urine sample, but I'm still positive from my previous incident report [from January]. My levels are dropping." Wilson Decl. ¶ 13, Ex. G at 1. Inmate Spear presented a copy of his earlier incident report to the DHO, showing he provided a urine sample on January 19, 2025, which tested positive for buprenorphine at 12 ng/ml and marijuana metabolite at 1500 ng/ml. *Id.* Spear further commented, "See, in the previous incident report my marijuana level was 1500 ng/ml. In this one it's 213 ng/ml. My levels are dropping. My urine was still positive from the previous incident. I've been working out as much as possible to try to get it out of my system." *Id.* Spear waived his right to call witnesses and did not present any documentary evidence on his behalf. *Id.*, Ex. G at 1, 2.

In response, DHO Chambers pointed out that Spear provided an intervening urine sample on February 24, 2025, "which tested negative for any of the 14 panel drugs." *Id.*, Ex. G at 3. This intervening negative test, according to the DHO, "contradicted and refuted" Spear's claim that his THC levels were still

6

dropping from his January positive test. *Id.*, Ex. G at 3–4. What's more, DHO Chambers relied on a BOP Program Statement allowing re-testing after a positive test "based on the maximum lengths of time, after last use, that a person's urine would test positive for a particular drug." *Id.*, Ex. G at 3. For THC, that established waiting period is 30 days. *Id.*

Based on the Incident Report, investigation, supporting documentation, and Spear's statement at the DHO hearing, DHO Chambers found Spear committed the prohibited acts of Code 112, Use of Any Narcotic. Wilson Decl. ¶ 14, Ex. G at 2. DHO Chambers sanctioned Spear as follows: (1) disallowance of 41 days good conduct time; (2) 100 days forfeited of non-vested good time; (3) 60 days of Disciplinary Segregation; and (4) monetary fine of $108.00. *Id.*, Ex. G at 4. The sanctions imposed are within the guidelines authorized by BOP Program Statement 5270.09, *Inmate Discipline Program. Id.* ¶ 19, Ex. A at 45-47. The DHO provided the reasons for the sanctions. *Id.* ¶ 18, Ex. G at 4.

## IV.    Spear's Use of the Bureau's Administrative Remedy Program

BOP has established a multi-tier administrative remedy program that allows inmates to seek formal review of any issues relating to their confinement. 28 C.F.R. § 542.10. The BOP's remedy program requires an inmate to: (1) attempt informal resolution of the grievance by submitting a Request for Informal Resolution form ("BP-8") to unit staff; (2) if informal resolution is unsuccessful, file

a formal Request for Administrative Remedy form ("BP-9") with the Warden within 20 days of the event triggering the inmate's complaint; (3) if dissatisfied with the Warden's response, appeal to the appropriate Regional Director by filing a Regional Office Administrative Remedy Appeal form ("BP-10") within 20 days of the date of the Warden's response; and (4) if dissatisfied with the Regional Office's response, appeal to the Director, National Inmate Appeals, in the Office of General Counsel by filing a Central Office Administrative Remedy Appeal form ("BP-11") within 30 days of the date of the Regional Office's response. *Id.* §§ 542.13 to .15. An inmate may not raise an issue in an appeal that was not raised in a lower-level filing. *Id.* § 542.15. An inmate has not exhausted his administrative remedies until he receives a response from the Central Office, unless the time allotted for its reply is exceeded. *Id.* §§ 542.15, 542.18. DHO appeals skip the first two steps in this process and may be submitted initially to the Regional Director on BP-10. *Id.* § 542.14(d)(2).

Since July 1980, the Bureau has maintained in its SENTRY database information related to administrative complaints and appeals filed by inmates. Declaration of Jake Bush ("Bush Decl.") ¶ 11. A computerized search of the SENTRY database can be conducted to find information on administrative complaints and appeals filed by a specific inmate. *Id.* Each formal complaint and appeal (i.e., BP-9, BP-10, and BP-11) is logged into SENTRY at the receiving

8

location. *Id.* ¶ 12. If the complaint is an initial filing, it receives a unique Remedy ID Number. *Id.* Each Remedy ID Number also contains an extension that identifies the level of review, i.e., "F-1" when filed at the institutional level, "R-1" at the regional level, or "A-1" at the national level. *Id.* Hard copies of filed administrative remedies are maintained for a period of three years. *Id.* ¶ 14.

As of May 15, 2026, Spear had attempted to file five administrative remedies during his incarceration with the Bureau of Prisons. Bush Decl. ¶ 15, Ex. B. Four of these administrative remedies are not relevant to the issue presented in this petition. *Id.* ¶ 16, Ex. B. Two remedies are about home confinement. *Id.*, Ex. B at 2. Two remedies are about different incident reports he received. *Id.*, Ex. B at 3, 4.

On or about September 8, 2025, Spear attempted to file Administrative Remedy 1253630-R1 with the regional office, challenging the discipline he received for Incident Report No. 4091295. Bush Decl. ¶ 17, Ex. B at 3. The administrative remedy was procedurally rejected as untimely, and Spear was directed to provide a staff memorandum explaining why the untimeliness was not his fault: "DHO Report delivered 4-18-25 Appeal was due 5-8-25 Didn't xfer until 6-9-25 Appeal form given 7-16-25 Why so untimely provide staff verification memo." *Id.*, Ex. B at 4. He was given additional time to resubmit his administrative remedy appeal. *Id.* Since the rejection of Administrative Remedy 1253630-R1, Spear has not refiled Administrative Remedy Series 1253630 at any level. *Id.* ¶ 18, Bush Ex. B.

9

## ARGUMENT

The Court should reject Spear's petition. Spear contends the disciplinary process violated his due process rights and the prohibition against double jeopardy. ECF No. 1-1 at 1. He asserts he was disciplined for using marijuana in January 2025 in Incident Report No. 4064634, and at the time, his THC levels were 1500 ng/ml. *Id.* Then, in March 2025, he tested positive for THC again, resulting in Incident Report No. 4091295—the report at issue in this petition. *Id.* Spear argues his March 2025 THC levels were 213 ng/ml, which demonstrates the THC from his January 2025 was still in his system but dropping. *Id.* He denies using THC between January and March 2025. *Id.* His argument is without merit, and the petition should be denied.

## I.   Spear's petition should be dismissed for failing to exhaust his administrative remedies.

As an initial matter, the Court should dismiss the petition for failing to exhaust administrative remedies. A federal prisoner wishing to challenge an action of the BOP must ordinarily exhaust administrative remedies before seeking extraordinary relief in a § 2241 petition. *Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); *United States v. Chappel*, 208 F.3d 1069, 1069–70 (8th Cir. 2000) (per curiam); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an

adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). Habeas petitioners can be excused from exhausting administrative remedies if they show that proceeding through the remedy process would be futile and would serve no useful purpose. *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004).

"The benefits from prior administrative review are substantial. The procedure must be given the opportunity to succeed." *Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976). Courts have therefore found that failing to exhaust results in a procedural default. *Donnelly v. Fed. Bureau of Prisons*, No. 10-cv-3105 (DWF/JSM), 2012 WL 2357511, at *3 (D. Minn. May 30, 2012) (collecting cases), *R. & R. adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012). "Procedurally defaulted claims will not be entered in federal court, unless the prisoner is able to show 'cause' for his default, and that actual prejudice will result if his claims are procedurally barred." *Id.* The United States Supreme Court has explained, "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[.]" *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

Spear admitted in a supplemental filing with the Court that he did not exhaust his administrative remedies, but not for the lack of trying. According to

11

Spear, on an unspecified date after he received his DHO report and while still at FCI Lewisburg, he mailed his administrative remedy. ECF No. 6 at 1. Spear alleges he never received a response, so he requested a new administrative remedy form when he arrived at FCI Sandstone. *Id.* When that administrative remedy was rejected as untimely, he claims the staff member refused to provide him verification for his untimeliness. *Id.*

Spear's explanation for his lack of administrative exhaustion should not excuse his failure to do so. Setting aside the dispute facts of whether he attempted to exhaust at FCI Lewisburg, he ignores the fact that it took him almost two months from receiving his administrative remedy form at FCI Sandstone—July 15—until it was received by the region on September 8. While the initial delay may have been outside his control, this second delay was not. His lack of diligence should not be excused.

## II. Spear received all due process to which he was entitled, and sufficient evidence supports the DHO's discipline.

### A. Spear Received Procedural Due Process.

Depriving an inmate of good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *See Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–58 (1974)). But because "[p]rison disciplinary proceedings are not part of a criminal prosecution . . . , the full panoply of rights due a defendant in

12

such proceedings does not apply." *Wolff*, 418 U.S. at 556. The Supreme Court clarified that *Wolff* held an inmate subject to the loss of good conduct time in prison disciplinary proceedings must receive the following minimal due process:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453–54 (1985). These requirements are codified in BOP's regulations providing for disciplinary proceedings. 28 C.F.R. § 541.5, .8.

Spear was afforded each of these procedural due process rights during his disciplinary proceeding. He: (1) received advance written notice of the disciplinary charges when he was provided a copy of the Incident Report on March 28, 2025, *see* Wilson Decl. ¶ 9, Ex. D at 1; (2) was provided the opportunity to call witnesses and present documentary evidence in his defense, *id.* ¶¶ 11, 13, Exs. E, F, G at 1; and (3) received a written DHO report containing the evidence relied on and the reasons for the disciplinary action, *Id.* ¶ 12, Wilson Decl., Ex. G at 5. Spear does not show he was denied any of these procedural due process protections. *See generally* ECF No. 1, ECF No. 1-1.

13

**B.   Sufficient evidence supports the DHO's decision that Spear is responsible for violating disciplinary code 112.**

Spear frames his merits argument as double-jeopardy challenge, but double jeopardy does not apply to the disciplinary process. *See Kerns v. Parratt*, 672 F.2d 690, 691-92 (8th Cir. 1982); *see also Ward v. King*, No. 24-CV-114 (JRT/DTS), 2024 WL 5340680, at *5 (D. Minn. Nov. 27, 2024), *R. & R. adopted* 2025 WL 240771 (Jan. 17, 2025). Rather, the Court should consider Spear's claim that he was disciplined twice for the same use of marijuana under the "some evidence" standard applicable to due-process challenges in the prison-discipline context.

Due process also requires that a DHO's finding be based on "some evidence in the record." *Hill*, 472 U.S. at 454. This standard is highly deferential and requires only the existence of "some evidence from which the conclusion of the administrative tribunal could be deduced . . . " *Id.* at 455 (quoting *United States ex rel. Vajtauer v. Comm'r of Immig.*, 273 U.S. 130, 106 (1927)). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56 (emphasis added). Once the Court determines there is "some evidence" to support the finding of the DHO, it should look no further for contrary evidence. Rather, the Court should reject the evidentiary challenge and uphold the DHO's findings. *Id.* at 457; *see also Brown v. Frey*, 807 F.2d 1407, 1414 (8th Cir. 1986) (holding officers' memorandum is "some evidence" supporting discipline); *Gomez v. Graves*, 323 F.3d 610, 612 (8th Cir. 2003)

14

("[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record.").

The courts are not part of the appellate process for prison discipline proceedings. *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir. 1990); *Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969). The findings of a prison disciplinary authority should not be second-guessed by the federal courts so long as they "are supported by some evidence in the record." *Hill*, 472 U.S. at 455. Satisfying the standard does not require an independent assessment of the credibility of witnesses or weighing of the evidence. *Id..; see also Goff v. Burton*, 7 F.3d 734, 739 (8th Cir. 1993). The standard merely requires the existence of *any* evidence in the record that would support the conclusion reached by the disciplinary board. *See Hill*, 472 U.S. at 455-56. The Court should accept the DHO Wilson's determination that Spear violated Code 112 because "some evidence" supports the DHO's conclusion. *See Campbell*, 623 F.2d at 505; *see also Hill*, 472 U.S. at 455-56; *Mason*, 898 F.2d at 680.

*First*, Spear's intervening negative urinalysis test from February refutes Spear's claim that his March positive test result was linked to his January positive test result. The DHO determined Spear was tested for narcotics on February 24, 2025—between the January 19 and March 19 positive tests—and the result was *negative*. Wilson Decl. ¶ 16, Exs. G at 3, H. This directly undercuts Spear's claim that his March 2025 THC level was related to his January 2025 marijuana usage. If

15

he is to be believed, his THC level somehow dropped to a negligible level in February but rose again prior to his March 2025 test. Further, the negative February 24, 2025, test occurred more than 30 days after the positive January 19, 2025, test, providing evidentiary support for the 30-day waiting period in Program Statement 6060.08. Based on the negative February 2025 test, the DHO appropriately concluded Spear used marijuana at some point 30 days prior to providing a urine sample on March 19, 2025. *Id.*, ¶ 17, Ex. G at 3.

And *second*, the DHO determined Program Statement 6060.08, *Urine Surveillance and Narcotic Identification*, provided minimum waiting periods Bureau staff should use before successive disciplinary action could be taken for use of the same drug. Wilson Decl. ¶ 15, Ex. G at 3. The DHO noted the minimum waiting periods were based on the maximum lengths of time, after someone's last use, that their urine would test positive for a particular drug. *Id.* Further, the DHO noted BOP policy established 30 days as the waiting period. *Id.* Spear provided no scientific evidence to refute the minimum waiting period established in Program Statement 6060.08 or to support his claim that his lower March THC level was still due to marijuana use in January 2025.

Therefore, the disciplinary proceeding at issue did not violate Spear's constitutional right to due process as he alleges. The petition should accordingly be denied.

16

**III.    An evidentiary hearing is unnecessary.**

The government contends the Court has sufficient information to rule against Spear on the papers. An evidentiary hearing is therefore not warranted.

### CONCLUSION

Respondent respectfully requests the Court deny Petitioner's habeas petition and dismiss the action with prejudice.

Dated: May 29, 2026                     Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

*/s/ Lucas B. Draisey*
BY: LUCAS B. DRAISEY
Assistant United States Attorney
Attorney ID Number 0401625
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600
lucas.draisey@usdoj.gov